## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **No. 94 CR 383** |
| | ) | |
| **v.** | ) | **Hon. R Bryan Harwell** |
| | ) | |
| **ALBERT DELON REED, JR.** | ) | |

---

### ALBERT REED JR.'S MOTION FOR IMPOSITION OF A REDUCED SENTENCE PURSUANT TO SECTION 404 OF THE FIRST STEP ACT <u>AND REQUEST FOR</u> <u>EXPEDITED BRIEFING</u>

> *"I believe that everybody pretty well agrees that Congress made a mistake when they decided that crack cocaine should be treated a hundred times more seriously than powder cocaine. . . . It would be unfair to all the hundreds of people that have been sentenced under that law [ ] not to go back and correct those sentences. . . You shouldn't have people serving time that is unfair and improper."*

> – District Judge C. W. Houck at the sentencing of Albert Reed

Defendant ALBERT REED has served 24 years of a mandatory life sentence. At age 49, Mr. Reed has been imprisoned for over half of his life. His crime: He sold 193.4 grams of crack to a confidential informant.[1] The government filed a mandatory life enhancement pursuant to 21 U.S.C. § 851, maintaining Mr. Reed's federal case was his third strike. The sentencing court vocally disagreed with a life sentence, but it was required to impose the "unfair and improper" penalty.

Our nation's crack laws have changed significantly during Mr. Reed's 24 years of

---

[1]    Mr. Reed was also convicted of selling 886.6 grams of marijuana to the informant. However, the marijuana distribution is not the basis for his mandatory life sentence pursuant to 21 U.S.C. § 851.

incarceration. Most recently, Section 404 of the FIRST STEP Act of 2018 authorized district courts to reduce sentences for crack convictions where the statutory penalty provisions of the Fair Sentencing Act (FSA) would have applied had the FSA been in effect at the time of the original sentencing.

And, too, Mr. Reed has changed significantly over the years. Orphaned by age 14, Mr. Reed spent his formative years committing small-time drug offenses to fend for himself and his sisters. He has no violent convictions and does not deserve permanent banishment. Indeed, he is a trusted prisoner who BOP staff describe as "never a source of concern."[2] Mr. Reed has sound family support and a job waiting on him upon his release from incarceration.

For these reasons, and as further explained below, DEFENDANT ALBERT REED, by his counsel MIANGEL CODY and DAVID SIMPKINS, respectfully moves that his life sentence be reduced to 330 months' imprisonment (time served) pursuant to Section 404 of the First Step Act.

## I.  APPLICABLE LAW

### A.     The Fair Sentencing Act of 2010

Prior to the Fair Sentencing Act of 2010 (FSA), an offense involving 50 grams or more of crack cocaine triggered a 10-year mandatory minimum and a statutory maximum of life imprisonment. An offense involving 5 to 49.9 grams of crack cocaine triggered a 5-year minimum sentence and a statutory maximum of 40 years of imprisonment. *Dorsey v. United States, 567* U.S. 260, 266 (2012).

---

[2]     *See* BOP UNICOR work recommendation and Inmate Education Data Transcript, attached as Exhibit A.

Section 2 of the FSA amended § 841(b)(1)(A)(iii) by striking "50 grams" and inserting "280 grams" and amended § 841(b)(1)(B)(iii) by striking "5 grams" and inserting "28 grams". Public Law 111-220; 124 Stat. 2372, § 2. Accordingly, post-FSA, it takes 280 grams of crack cocaine to trigger § 841(b)(1)(A)(iii)'s 10-year mandatory minimum and 28 grams to trigger § 841(b)(1)(B)(iii)'s 5-year mandatory minimum. *Dorsey, 567* U.S. at 269. The Supreme Court determined the FSA applied to any defendant who had not been sentenced as of the Act's effective date: August 3, 2010. *Id.* at 281. The FSA did not apply retroactively to defendants sentenced prior to August 3, 2010. *Id.*

### B.    The First Step Act of 2018

The First Step Act of 2018 legislatively authorized district courts to reduce pre-FSA crack penalties retroactively for "covered offense[s]". Specifically, § 404(a) of the First Step Act defines a covered offense as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372),[3] that was committed before August 3, 2010." Section 404(b) then states: "[a] court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed."[4]

---

[3]    Section 3 of the FSA eliminated the mandatory sentence for simple possession of crack cocaine in 21 U.S.C. § 844(a).

[4]    There are only two limitations to the Court's ability to impose a reduced sentence. First, the defendant cannot receive a reduced sentence if the sentence was imposed or previously reduced in accordance with the amendment made by sections 2 and 3 of the FSA. Second, if the Court has already rejected a motion filed under § 404 of the Fair Sentencing Act "after a complete review of the motion

## II. DISCUSSION

### A.    Albert Reed is *eligible* for a reduced sentence under Section 404.

Albert Reed was charged by a single-count Indictment of knowingly distributing cocaine base (193.4 grams) and marijuana (886.6 grams) on August 3, 1994. On December 29, 1994, the government filed a three-strikes enhancement pursuant to 21 U.S.C. § 851. On January 11, 1995, a jury found Mr. Reed guilty. At sentencing, District Judge C. W. Houck reluctantly imposed a mandatory life sentence stating: "If Congress changes the law … my inclination would be to come back and re-do those sentences." Sent. Tr. at 62. The Fourth Circuit Court of Appeals affirmed Mr. Reed's conviction and sentence on November 1, 1996. *United States v. Reed*, 100 F.3d 951 (4th Cir. 1996).

Remarkably, Mr. Reed's first two predicate strikes were relatively minor convictions. His first strike occurred when Reed was just 19 years old and sold a $10 bag of crack. His second strike occurred at age 22 when Reed was arrested for 81 grams of cocaine.  Prior to his mandatory life sentence, Mr. Reed's longest incarceration was approximately two years in jail.

Section 404 of the FIRST STEP Act of 2018 independently authorizes a district court to impose a reduced sentence for crack convictions where the statutory penalty provisions of the Fair Sentencing Act would have applied had the Act been in effect at the time of the original sentencing.  Since Mr. Reed's offense was committed before August 3, 2010, it is a covered offense as defined in § 404(a) of the First Step Act and the Court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed."

---

on the merits" the defendant cannot ask for a second bite at the apple. First Step Act § 404(c). Neither exception applies to Mr. Reed's case, as he has never received or been denied a Section 404 reduction.

4

Accordingly, Mr. Reed is *eligible* for a sentence reduction pursuant to the First Step Act. The question, then, is to what *extent* the Court should reduce Mr. Reed's sentence.

### B.     The Court should impose a reduced sentence of 330 months imprisonment (time served) on Count 1 of the Indictment.

Per the original PSR, Mr. Reed was found to be a career offender, which increased his total offense level to 37 and his criminal history category to VI. PSR at ¶27.  Under the current guidelines manual, Mr. Reed remains a career offender pursuant to U.S.S.G. §4B1.1. His total offense level remains 37 and his criminal history category is VI, resulting in a guideline range of 360 months to life.

Mr. Reed seeks a sentence reduction that is only slightly below the advisory career offender guideline. **Mr. Reed has been in custody since August 4, 1994. He has served approximately 295 months of actual custody.** With good-time credit, Mr. Reed has credit for approximately 330 months' incarceration. He respectfully requests that his sentence be reduced to 330 months' (time served) imprisonment for two reasons.

First, there is a significant "need to avoid unwarranted sentencing disparities" in this case. *See* 18 U.S.C. § 3553(a). Though the career offender guideline *technically* applies, Mr. Reed is not a heartland career offender. Congress intended the career offender guideline to assure "substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers."[5] The U.S. Sentencing Commission created the career offender guideline (§ 4B1.1) in response to a congressional directive to punish the worst of the worst "at or near the maximum term authorized."[6] To be deemed a career offender, the defendant must have

---

[5] S. Rep. No. 225, 98th Cong., 1st Sess. 175 (1983).
[6] *See* 28 U.S.C. § 994(h) (1984).

at least two prior felony convictions for violence or drug trafficking. The base offense level for career offenders is keyed to the statutory maximum punishment for the federal crime of conviction.[7] Career offenders automatically receive a criminal history category of VI—the highest category—no matter how many criminal history points they may otherwise possess.[8] Thus, according to the legislative history and application notes to § 4B1.1, the express "heartland" of career offenders are "repeat violent offenders and repeat drug traffickers."

Here, Mr. Reed has never been charged or convicted of any violent offense. He is subject to the career offender guideline purely by operation of two, relatively minor drug convictions.  At age 19, he sold a $10 bag of crack. At age 22, he was arrested with 81 grams of cocaine. He is hardly the incorrigible "heartland" career offender that the guidelines intended to punish most harshly. Comparably, Mr. Reed's guidelines would be considerably lower if he were not classified as a career offender. He would receive an offense level 26 under the drug table guideline, and he would fall into criminal history category IV, resulting in a guideline range of 92 to 115 months. Mr. Reed has already served 24 years' imprisonment for his 193-gram, single count crack offense – a hefty penalty that far outpaces the heartland sentence in similar crack offenses the Court often sees.

Second, Mr. Reed's history and characteristics also favor a sentence reduction. Per the PSR, Mr. Reed grew up without a father or mother figure. Both of Mr. Reed's parents had died of cancer by his teenage years. PSR at ¶ 33. He made an errant decision to sell small quantities of crack to support himself and his sisters – who were orphaned by the

---

[7] *See* USSG § 4B1.1.
[8] *Id.*

death of their parents and left with no support. Mr. Reed briefly attended college, but was

unable to continue. In his letter, Mr. Reed describes the circumstances of his life. He

includes a 1976 news article that features his family and discusses the impoverished

conditions his family faced after his father's death.[9]

Even with no certainty of release, Mr. Reed has not wasted his 24 years of

incarceration. He was one of a limited number of prisoners selected for the federal prison's

UNICOR work program.[10] According to the BOP, there are approximately 25,000 inmates

on the waiting list to work in UNICOR, and only 8% of work-eligible inmates participate in

the program.[11] A BOP study found that "[i]nmates who participated in UNICOR were

24% less likely to revert to criminal behavior as much as 12 years following release and 14%

more likely to be gainfully employed following release from prison."[12] Mr. Reed has

received UNICOR Special Achievement Awards and wage bonuses for his "**outstanding**"

work performance and contributions and BOP staff report he is "**never a source of

concern**." In short, Mr. Reed has proven to the very people charged with his incarceration

that he deserves release.

---

[9]     Letter from Albert Reed attached as Exhibit B.
[10]    The Bureau of Prisons describes its UNICOR prisoner-to-work program as follows:
"UNICOR is the trade name for Federal Prison Industries (FPI): a wholly owned, self-sustaining
Government corporation that sells market-priced services and quality goods made by inmates. But
more importantly, it's also a vital correctional program that assists offenders in learning the skills
necessary to successfully transition from convicted criminals to a law-abiding, contributing members of
society. UNICOR benefits everyone." *Available at*
https://www.bop.gov/inmates/custody_and_care/unicor.jsp (last visited Feb. 28, 2019).
[11]    *See* Overview of UNICOR Program, *available at*
https://www.bop.gov/inmates/custody_and_care/unicor_about.jsp (last visited Feb. 28, 2019).
[12]    *Id.*

**UNICOR - LEE COUNTY CUT AND SEW**
FEDERAL PRISON INDUSTRIES

**INMATE INDUSTRIAL INCENTIVE AWARD PROGRAM**

Date: _1 -21 -09_

Information requested for submission of this nominee for the UNICOR Incentive Award Program is as follows:

Name: _Reed_     Reg. _90558-071_  Unit: _F_

Work Detail: _4_

Grade _1_

Anniversary Date: _7/16/04_

Length of time on the present job: _____

Last time received Incentive Award? _06 /06 /06_

Basis for this recommendation: _Reed gets work done in a timely manner and is never a source of concern_

In addition, Mr. Reed has a sound reentry plan, a loving and hardworking, middle-class family and a job waiting for him upon his release. He intends to live with his sister Janine Jackson-Davis in Gaithersburg, Maryland.[13] Ms. Jackson-Davis is an elementary school counselor who owns her own home. Ms. Jackson-Davis reports that her family has "space in our home and our hearts for my brother." In her attached letter, Ms. Jackson-Davis describes her family life as one that "functions by way of structure, rules, routines, high standards and expectations. We believe in hard work, service and spending time together."  In addition, Mr. Reed has a guaranteed job upon his release. Mr. Jackson-Davis's husband is a Montgomery, Maryland county employee who owns his own cleaning business. Mr. Reed will work in the family business if he is released from prison. In short, the advice of the Guidelines and the Sentencing Reform Act comports with what Mr. Reed has proven by his own conduct and the statements of BOP officials who attest to his character: a sentence of life in prison is "greater than necessary" to meet the parsimonious

---

[13]     Ms. Janine Jackson-Davis's letter of support and Mr. Reed's reentry program acceptance letter are attached as Exhibit C.

purposes of federal sentencing. On these particular facts, for this particular defendant, and this particular community reentry plan, the defense asks the Court to reduce Mr. Reed's life sentence to 330 months.

### III.    CONCLUSION

WHEREFORE Section 404 grants the district court explicit discretion to reduce sentences imposed under the excessively-harsh penalty structure that Congress has now renounced.  Defendant Albert Reed has certainly earned such a reduction, and he respectfully asks that the Court reduce his life sentence to 330 months (time served).

If the Court requires briefing on this motion, Mr. Reed respectfully requests that the briefing be ordered expedited.

Respectfully submitted,

/s/ David Simpkins
David Simpkins

KILPATRICK TOWNSEND & STOCKTON LLP
214 North Tryon St., Ste 2400
Charlotte, NC 28202-2381
Tel: (704) 338-5287
Fax: (704) 371-6416

/s/ MiAngel Cody
MIANGEL CODY
*( Pro Hac Vice pending)*

THE DECARCERATION COLLECTIVE
LAW OFFICE
1325 S. Wabash St., Suite 305
Chicago, IL 60605
Tel: (312) 858-8333
Fax: (312) 858-8334

*Attorneys for Albert Reed*

## CERTIFICATE OF SERVICE

The undersigned, David Simpkins, an attorney hereby certifies that on March 18, 2019, I electronically filed the following with the Clerk of the Court using the CM/ECF system:

**ALBERT REED JR.'S MOTION FOR IMPOSITION OF A REDUCED SENTENCE PURSUANT TO SECTION 404 OF THE FIRST STEP ACT AND REQUEST FOR EXPEDITED BRIEFING**

/s/ David Simpkins
DAVID SIMPKINS

KILPATRICK TOWNSEND &
STOCKTON LLP 214 North Tryon St.,
Ste 2400
Charlotte, NC 28202-2381
Tel: (704) 338-5287
Fax: (704) 371-6416

Attorney for Albert Delon Reed, Jr.

EXHIBT A: BOP Awards and Inmate
Education Transcript

# UNICOR - LEE COUNTY CUT AND SEW
### FEDERAL PRISON INDUSTRIES

## INMATE INDUSTRIAL INCENTIVE AWARD PROGRAM

Date: _1 -21 -09_

Information requested for submission of this nominee for the UNICOR Incentive Award Program is as follows:

Name: _Reed_    Reg. _90 558-071_    Unit: _F_

Work Detail: _4_

Grade _1_

Anniversary Date: _7 /16 / 04_

Length of time on the present job: _____

Last time received Incentive Award? _06 / 06 / 06_

Basis for this recommendation: _Reed gets work Done in a timely manner and is never a source of concern_

_____

Work Supervisor

QA Manager                                              $ _20.00_
                                                        $ Amount

Factory Manager

Associate Warden (I&E)

Remote Operational Accountant _2/26/09_



U.S. Department of Justice

Federal Bureau of Prisons

U.S. Penitentiary – Lee County

P.O. Box 900
Jonesville, Virginia 24263

Tuesday, June 06, 2006

Albert Reed
Reg. #90558-071
UNICOR Textile Factory

Mr. Reed

Congratulations!! You have been selected by your supervisor and chosen by the UNICOR Inmate Incentive Awards Committee to receive a $25 Cash Award.

Your selection by the committee represents an evaluation of your past and current work performance, which has exceeded expectations existing within the inmate grading structure. It is with great pleasure that I pass this recognition to you for such performance.

This award will be included on your May 2006 Earnings Statement.

A copy of this letter will be forwarded to your Unit Team for placement in your Central File.

With kindest regards,

Dennis Johnson,
Associate Warden, Industries & Education

Cc: Central File
        UNICOR File

```
 BSYJX          *        INMATE EDUCATION DATA        *      12-21-2017
 PAGE 001        *            TRANSCRIPT              *      12:30:37

 REGISTER NO: 90558-071    NAME..: REED                    FUNC: PRT
 FORMAT.....: TRANSCRIPT   RSP OF: BSY-BIG SANDY USP


 ------------------------- EDUCATION INFORMATION -------------------------
 FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
 BSY  ESL HAS   ENGLISH PROFICIENT        11-28-1995 0834 CURRENT
 BSY  GED HAS   COMPLETED GED OR HS DIPLOMA 12-06-1995 1353 CURRENT


 ------------------------- EDUCATION COURSES -------------------------
 SUB-FACL   DESCRIPTION              START DATE  STOP DATE EVNT AC LV  HRS
 BSY        DEBATE TEAM              06-07-2017 CURRENT
 BSY        POSITIVE AWARE NEGATIVE AWARE 11-27-2017 CURRENT
 BSY        JOB FAIR-INTERVIEW       05-02-2017 05-02-2017  P  C  P    1
 BSY        PERSONAL TRAINER CERTIFICATION 12-21-2016 02-06-2017  P  C  P   24
 BSY        INTRO TO HEALTH WELLNESS 12-02-2016 01-27-2017  P  C  P    1
 YAP        REENTRY WEEK             04-25-2016 04-27-2016  P  C  P    3
 YAP        WORKPLACE BUDGETING RPP 3 03-09-2016 03-30-2016  P  C  P    8
 YAP        DISEASE 1                01-07-2016 01-07-2016  P  C  P    1
 ATW        RPP FDIC MONEY SMART     05-27-2015 09-24-2015  P  C  P   16
 LEE        (A)MSO WORD 2-CAI        09-16-2013 01-04-2014  P  C  P   30
 LEE        (A)MSO WORD 1-CAI        09-16-2013 01-04-2014  P  C  P   30
 LEE        (A) TYPING MASTER 5: SPEC MARK 09-16-2013 01-04-2014  P  C  P   20
 LEE        LEAD BY EXAMPLE SEMINAR  03-23-2011 04-06-2011  P  C  P    3
 LEE        INTERPERSONAL COMMUNICATION 01-19-2011 03-31-2011  P  C  P   10
 LEE        RP6 INSIDE-OUT DAD       01-19-2011 03-21-2011  P  C  P   10
 LEE        CONFLICT RESOLUTION      01-19-2011 03-21-2011  P  C  P   10
 LEE        STUDY OF FINANCIAL MARKETS 09-10-2010 11-19-2010  P  C  P   10
 LEE        COMPUTER APPLICATIONS MECC AOE 09-14-2010 12-14-2010  P  C  C  140
 LEE        MAVIS BEACON TYPING - EVENING 07-02-2009 10-01-2009  P  C  P   12
 LEE        SEWING MACHINE OPERATOR  02-04-2008 03-19-2008  P  C  C  210
 FLM        THE JOY OF SCIENCE - PART 3 01-08-2004 03-17-2004  P  C  P   30
 FLM        HISTORY OF ANCIENT ROME-PART 2 01-14-2004 04-06-2004  P  C  P   36
 FLM        THE AFRICANS             03-05-2003 05-06-2003  P  C  P   27
 FLM        THE JOY OF SCIENCE - PART 1 02-06-2003 04-16-2003  P  C  P   30
 FLM        CLASSICAL MYTHOLOGY      11-27-2002 02-18-2003  P  C  P   36
 FLM        THE CELTS                11-28-2002 02-05-2003  P  C  P   30
 FLM        COMEDY THROUGH THE AGES  09-05-2002 11-27-2002  P  C  P   36
 FLM        ECONOMICS USA            08-21-2002 11-26-2002  P  C  P   42
 FLM        ALEXANDER AND HELLENISTIC AGE 05-29-2002 08-20-2002  P  C  P   36
 FLM        EYES ON THE PRIZE, PART II 04-04-2002 06-12-2002  P  C  P   30
 FLM        POLITICAL THEORY         02-20-2002 05-28-2002  P  C  P   42
 FLM        WORLD PHILOSOPHY         01-10-2002 04-03-2002  P  C  P   36
 FLM        THE AMERICAN PRESIDENTS  12-05-2001 02-19-2002  P  C  P   30
 FLM        VOICE&VISIONS-AMERICAN POETS 10-04-2001 01-02-2002  P  C  P   39
 FLM        THE WORLD OF CHEMISTRY   08-29-2001 12-04-2001  P  C  P   39
 FLM        KING ARTHUR & CHIVALRY   07-12-2001 10-03-2001  P  C  P   36
 FLM        HISPANIC HERITAGE        11-02-2000 01-10-2001  P  C  P   30
 FLM        WESTERN TRADITION PART 2 02-10-2000 05-10-2000  P  C  P   39
 FLM        EINSTEIN AND RELATIVITY  03-08-2000 05-02-2000  P  C  P   24
 FLM        KEN BURN'S "THE WEST"    12-09-1999 02-09-2000  P  C  P   27

 G0002      MORE PAGES TO FOLLOW . . .
```

```
 BSYJX          *        INMATE EDUCATION DATA      *      12-21-2017
PAGE 002 OF 002 *             TRANSCRIPT            *      12:30:37

REGISTER NO: 90558-071   NAME..: REED                    FUNC: PRT
FORMAT.....: TRANSCRIPT   RSP OF: BSY-BIG SANDY USP

-------------------------- EDUCATION COURSES --------------------------
SUB-FACL   DESCRIPTION              START DATE  STOP DATE EVNT AC LV  HRS
FLM        AIR COMBAT               10-02-1999 12-29-1999  P   C  P    39
FLM        AFRICANS IN AMERICA      10-14-1999 12-09-1999  P   C  P    24
FLM        THE HISTORY OF WW II     04-03-1999 07-02-1999  P   C  P    39




G0000      TRANSACTION SUCCESSFULLY COMPLETED
```



# CERTIFICATE OF COMPLETION

## BUSC 1595

## *Software Specialty Training*

### This is to certify that

## ALBERT REED

has completed
The *Software Specialty Training Program*
an approved **Continuing Education Unit (CEU) Program**
sponsored by the **Center for Workforce Development**
at **Mountain Empire Community College.**

Lance Cole, USP Lee/Director of Education

Mitzi Williams, MECC/Workforce Development

**Completion Date:**  *December 2, 2010*
**Hours Completed:**  *90 hours*
**CEUs Awarded:**  *9.0*

CENTER *for*
WORKFORCE
DEVELOPMENT
MOUNTAIN EMPIRE COMMUNITY COLLEGE

# OFFICIAL TRANSCRIPT OF RECORD

Denmark Technical College
P.O. Box 327
Denmark, South Carolina 29042-0327

MR. ALBERT D REED
DATE OF BIRTH 10/07/65    SSN 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

| COURSE & TECHNOLOGY TITLE | CODE | R | Quarter Credits Attempted | Earned | Quality Points | CEUS |
|---|---|---|---|---|---|---|
| ACCOUNTING | | | | | | |
| PRINCIPLES OF ACCOUNTING I | ACC101A | 4 | 45 | 45 | 180 | |
| ENGLISH ESSENTIALS | ENG062S | 0 | 30 | 30 | | |
| PERSONAL AND COMMUNITY HEALT | HEA131A | 4 | 45 | 45 | 180 | |
| MATH ESSENTIALS | MAT062U | 3 | 10 | 10 | 30 | |
| FRESHMAN ORIENTATION | PSY103B | | | | | |
| FALL 89-90 GPR 2.90 TOTALS | | | 160 | 130 | 390 | |
| | | | | | | |
| PRINCIPLES OF ACCOUNTING II | ACC102C | 2 | 45 | 45 | 90 | |
| ENGLISH COMPOSITION I | ENG101F | 0 | 45 | 45 | 00 | |
| PRINCIPLES OF MANAGEMENT | MGT101D | 1 | 45 | 45 | 45 | |
| INDUSTRIAL HUMAN RELATIONS | PSY112C | 2 | 30 | 30 | 60 | |
| WINTER 89-90 GPR 1.18 TOTALS | | | 165 | 120 | 195 | |
| | | | | | | |
| PRINCIPLES OF ACCOUNTING III | ACC103F | 0 | 45 | 00 | 00 | |
| COST ACCOUNTING PRINCIPLES I | ACC220F | 0 | 45 | 00 | 00 | |
| MICROCOMPUTER APPLICATIONS | CPT170W | | 45 | 45 | | |
| ORAL COMMUNICATION | SPC105D | | 45 | 45 | | |
| SPRING 89-90 GPR 0.33 TOTALS | | | 180 | 45 | 45 | |
| | | | | | | |
| PRINCIPLES OF ACCOUNTING III | ACC103B | 3 | 45 | 45 | 135 | |
| INTRODUCTION TO BUSINESS | BUS101B | 3 | 45 | 45 | 135 | |
| ENGLISH ESSENTIALS | ENG062U | | 30 | 30 | | |
| MATH ESSENTIALS | MAT062U | | 30 | 30 | | |
| FALL 90-91 GPR 3.00 TOTALS | | | 150 | 90 | 270 | |
| | | | | | | |
| MONEY AND BANKING | BAF223F | 0 | 45 | 00 | 00 | |
| BUSINESS LAW I | BUS122F | 0 | 45 | 00 | 00 | |
| ENGLISH ESSENTIALS | ENG063W | | 30 | 30 | | |
| MATH ESSENTIALS | MAT063SC | | 30 | 30 | | |
| WINTER 90-91 GPR 0.00 TOTALS | | | 150 | 00 | 00 | |
| | | | | | | |
| TAX PROCEDURES I | ACC121B | 3 | 45 | 45 | 135 | |
| MICROECONOMICS | ECO254C | 2 | 45 | 45 | 90 | |
| ENGLISH ESSENTIALS | ENG064U | | 30 | 30 | | |

| COURSE & TECHNOLOGY TITLE | CODE | R | Quarter Credits Attempted | Earned | Quality Points | CEUS |
|---|---|---|---|---|---|---|
| SPRING 90-91 GPR 2.50 TOTALS | | | 120 | 90 | 225 | |
| | | | | | | |
| PAYROLL ACCOUNTING | ACC115W | F0 | 45 | | 00 | |
| MACROECONOMICS | ECO253W | | 45 | | 00 | |
| ENGLISH COMPOSITION I | ENG101W | | 45 | | | |
| CRITICAL THINKING | HSS101F | 0 | 45 | | 00 | |
| FALL 91-92 GPR 0.00 TOTALS | | | 180 | | 00 | |
| | | | | | | |
| TECHNOLOGY GPR 1.57 TOTALS | | | 1105 | 505 | 1125 | |
| TOTAL ON TRANSCRIPT | | | | | | |
| | | | | | | |
| CUMULATIVE GPR 1.57 TOTALS | | | 715 | 505 | 1125 | |

ACADEMIC PROBATION

NOV 22 1991

TO:
MR. ALBERT D REED
159 S. LEXINGTON AVE
WHITE PLAINS NY
10601

EXHIBT B: Letter from Albert Reed

My name is Albert Reed and I have been serving time in federal prison for more than 20 years, for a non-violent drug offense. I am serving a life sentence based upon 193 grams of cocaine base (crack). My lawyer Mr. J. Rene Josey, former United States Attorney appointed by President Bill Clinton, has recently submitted a Petition for Commutation of Sentence to which we believe I do meet the criteria for prioritized clemency consideration. The purpose of this letter is to communicate to you personally as I would like for you to have a sense of who I am, as well as the person I have grown up to become.

There is more to my life's story than just another person selling crack. I grew up in an environment where my parents created a loving, happy home and where that sense of family was well established. Some of my fondest memories as a six year old come when as a family we traveled to this hotel in Manhattan and from the balcony of the hotel room, high up above the city; we could see the many ships as they went by, to and from. For a child this vacation was a happy time full of laughter and wonder, everything was good, life was good, the love, happiness and joy was evident within our family. The family bond and ties that my parents discussed with us often were reinforced with such outings as this and also tended to serve as learning experiences for us all.

As a child not much really matter to me, as my two sisters and I were clothed, fed, and had a roof over our heads. Once our father died of cancer in 1976 things changed. I was six years old and this sudden turn of events seemed to come out of nowhere. At the funeral, much of what I remember were a whole lot of crying, family and friends of the family informing me that I was the MAN now, "you have to take care of your mother and sisters." Etc. We soon began to move around a bit and seemingly did not stay under one roof for long and although clothed and fed, even as a youngster, I took notice that things were changing. What I took notice of was that my mother took the death of our father very hard. My sisters seemed to always follow my mother's lead so I'm sure they felt the loss as I did. Needless to say, we all were at a loss and would have to figure out what to do next, to get our lives back in order. What that all entailed, I really did not know at such a young age. How could I? The MAN responsible for guiding and teaching me how to become a man had just passed away. I had uncles and a grandfather yet none of them stepped up to fulfill this void in my life, and give to me the consistent time and instruction necessary to have an immediate impact upon the thoughts I came into contact with on a daily basis. Since thoughts sometimes control a person's actions, this turn of events would later lead to me making the decision to define myself as a drug dealer.

We soon moved into a housing project in White Plains, New York, where I was consistently bombarded with negative images that to a young impressionable mind was made to look over the course of time to appear normal, even positive. I grew up in an environment where a MAN working a 9-5 job in order to take care of his family appeared to be working too hard for too little pay. While on the other hand, there appeared to be more guys hustling i.e., selling drugs, gambling, running numbers, and even some thieves working these hustles and doing materially better than the few honest 9-5 men, I could point out. At least it appeared that way to a young mind yet every day I would go to school, despite taking note of this apparent conflict. Somewhere during those first couple of years in those projects material things became important to me, as I was often ridiculed as to the clothes I had to wear. So, the thought of acquiring material things and having the money to purchase things, I can say, began to take form in those

first few years.

School was something my mother always stressed to me and my sisters, that you can make it with a good education. I liked school growing up and I was good with numbers. It is just that I never felt a challenge. What I mean is a challenge to see how, what my teachers were teaching applied to me, in--relationship to my immediate and future situation in life. I could not grasp how learning about other people, especially those other people who have absorbed a much different experience than the reality to which I was living in daily, I could come to know myself/me. School never taught me about me, and that is what I needed to know first and foremost before learning about others. After my father passed away what MAN took on this task? I needed to know the greatness that resides inside of me in order to know, relate and appreciate, too, the greatness of others. For years life was a struggle until I was able to know me. Prior to this revelation I was shackled to an image that was not mine, defined by other people's perceptions that I had readily, yet falsely, taken on.

Over the next few years we struggled as a family and I witnessed my mother fall into a state of depression. At times she exuded confidence in certain things she would say and do for us, which always gave the impression we would be alright. Never did I not feel the love of a mother who would always put us first, and did whatever necessary to make sure we were cared for and or taken care of. We went through a lot of hard times, we laughed and cried together, plenty of lessons taught and learned, some learned the easy way, some learned the hard way and some learned later on in life but in learning the lessons taught I come to know the truth of things through experience... Chief among the lessons I learned: the importance of sticking together and sacrificing as a family. These lessons came in handy when my mother also passed away due to cancer, in 1986. I was 17 years old. The night my mother passed away she looked me in my eyes and told me to take care of my sister. I was there, in the hospital, when it happened and certainly that experience rocked my world. I don't even remember leaving the hospital. I just remember walking aimlessly in the neighborhood and crossed the path of a older man, a family friend, who I would often speak to and run errands for. I remember him asking, what are you crying for? I informed him that my mother just passed away. It is about 5 or 6 in the morning so he takes me to a diner around the corner from where we live. We order some food, go back to his home, we eat and begin to discuss my future options. Like my mother, he tells me about the importance of a good education and about the people he knew of who had made it out of the housing project. We also discussed the people who stayed and he let me know he did not want that for me. He let me know I had more to offer and that what resides inside of me is going to take some time to develop but never should I make the decision to sell myself short by turning to these streets.

At the funeral it was a sad affair and throughout this whole affair I'm sitting, thinking that someone in our family is going to say something along the lines of, "o.k. here is the plan..." But no one does. After the funeral no one came to check on us. We are living in this apartment with no adult supervision. My youngest sister is 16 and my oldest sister is 20 and a junior in college. Janine, my oldest sister, soon moves out to live with our grandmother. No one comes for me and my little sister. We are in this apartment alone, no money, and what little food we do have in the refrigerator is almost gone, the rent is due, in fact it is overdue. I probably could have went and got a job in a mall, or fast food place, but I did not see that as a real option with rent, food, and clothing being a pressing matter. School even became an afterthought. Nevertheless, at that time

there was no shortage of guys in the drug game wanting to help, and or assist, so I made the choice that my mother never wanted me to make. I simply let go and became a part of the false reality that influenced and pervaded my thoughts from the moment we moved into that housing project. Although I did eventually get around to enrolling and experiencing a couple of good semesters at Denmark Technical College in South Carolina, yet, by that time I really was too far gone to take advantage of the opportunity.

I am not above the law, I know what I did was wrong. Selling drugs is wrong, it was and is not the right thing to do and I now know it was a poor choice, a bad choice. I am remorseful as I realize now the struggle and destruction that addiction brings with it. In my drug dealing days I was just focused upon the dollars, the material things money can purchase. Never in those days did I pause for a moment to consider the effect of just how my decision to sell drugs played out upon the individuals coming to buy and also the community at large. I'm talking about more than the kids who looked up to me, created an image of me through witnessing the things I did and thus were impressionable and susceptible, as I was, as to the material things to which money can buy... Never in my past did I pause to consider just how my decision to sell drugs played out upon the kids who may have had to go without, as their parents spent money meant for the kids on drugs. These kids may have had to experience, or witness, a myriad of things associated in relationship to having parents addicted to drugs. My decision to sell drugs has had a impact well into the future in relationship to my own daughter, who is now 21 years old. She was only 6 months of age when I was arrested. In our relationship I can feel the love and pain and at times I can even see the struggle and strain within my daughter as she strives to make sense out of the fact that throughout the most important years of her life, she had no father figure to lean on. Having to always answer the question of why your father is not present at special occasions, times, and places, still hurts to this day. Having to deal with the fact that those early experiences, which strengthen the bonds and ties of a family are gone forever, still hurts to this day. Having to deal with the fact that as her father I am essentially a stranger (so to speak) and yet still my daughter is always craving, needing and wanting to consistently and without any time constraints feel my presence in her life, moving forward, to build a life together as a father and daughter should--hurts to this day. For me, these thoughts I hold and consider daily. Never in my past did I consider, or even have the capacity to fathom the effect of just how my decision to sell drugs could possibly, and in fact would, impact a relationship so far off into the future. I was not at all equipped to measure and or think of life's situations, circumstances, and or events in those terms, in that way, for my thinking was extremely narrow and short sighted. In those days, I do not recall formulating any long range plans, or basically any plans past the weekend. Over the years , while incarcerated, I've learned and have come to know myself, and I have taught myself to consistently think in these terms as to any and all things that I aspire to do.

A lot has occurred in my life to foster positive change within me that is consistent, lasting, and enduring. During my time in prison, you will find nothing in my prison disciplinary record that has me being "charged" or "convicted" of a crime in a court of law. If you need any additional information from us, please do not hesitate to call my attorney to let us know. During my time in prison, I have taken advantage of what little amount of educational programs are still available, and will prove useful upon my release. I have been able to take part in a software specialty training program, offered by the state of Virginia's Mountain Valley Community College, where I was taught to use and became familiar with the Microsoft Windows power point, word, excel,

as well as other basic computer applications and functions. I have already secured employment upon my release as well as housing. I've also considered and made plans as to how my time will be spent each day and what all I intend to accomplish within the first couple of years of my release. My support group is in place and with me 100%, so my schedule is set. With the assistance of my employer, who is involved with a few grassroots organizations, geared toward the positive development of young men, I too intend to get involved. I have a story that is worth telling and more importantly a responsibility to (me and community) at least to give back and make a difference with my time, in an effort to enlighten another person from having to realize and suffer a fate similar to that for which I have had to endure. Thank you for your time in reading this letter...

Sincerely,

# A room is not a home for a family

By CHARLES LACHMAN
Staff Writer



THE REPORTER DISPATCH, White Plains, N.Y.—Thurs., August 19, 1976

## Widow, three children share 1-room apartment

EXHIBIT C: Reentry Support Letter from
    Janine Jackson-Davis (Mr. Reed's Sister)

18803 Impulse Lane
Gaithersburg, MD 20879
March 3, 2019

Re: Albert D. Reed (90558-071)

To whom it may concern:

My name is Janine Jackson, and I am Albert's older sister who affectionately calls him Al. I am 53 years old and our younger sister is 48 years old. Both of our Parents and Grand-parents are deceased and it's just us three for over 30 years.

I am writing to sincerely ask that you grant Al a sentence reduction to time served, inform you of who I am, and my commitment to provide the utmost support that will ensure Al a sound foundational re-entry and transition plan.

Here's what you should know about me, how I live my life, my accomplishments and my regard for family. My family functions by way of structure, rules, routines, high standards and expectations. We believe in hard work, service and spending time together. I am married and have two teenagers. I embody "hope" in every aspect, personal and professional. I have a M.Ed.; I hold a National Board Certified Counselor license (NBCC).  I'm employed as a full-time Counselor with Montgomery County Public Schools, Maryland. In addition to my full-time employment, by June of this year, I plan to work part-time providing private therapy, specializing in assisting children and adults heal from a traumatic experience. It is my passion to support mental well-being.

Please imagine how elated I and my family are over the prospect of having Al come home. We held a family meeting and discussed all we would do to welcome Al into our home. I love my brother. It's important you know what Al's homecoming means to me and my family. It means more than words can express.  It means my kids being able to spend time with an Uncle they only heard of. Jared, a high school senior, will attend college in the fall with plans to become a screenwriter. Jurnee, a high school sophomore, Girl Scout, avid Tennis & Softball player. Both kiddos love their uncle Al and are looking forward to him coming home.

My home is Al's home. I own a single family house in a quaint neighborhood. Al would occupy his own bedroom, personal bathroom, and small office space inside my home. As mentioned, I am married and my husband is employed with Montgomery

County Government, Street Outreach Network. His responsibilities include working with youth in the County to prevent and reduce gang and other hostile behaviors among kids. He is also a Basketball Official for the County's Public and Private Schools. In addition to that, he owns and operates a cleaning business. The prospect of employment for Al is guaranteed by my husband. Please understand that we guarantee Al a safe and stable family that includes love, a home, emotional/social supports, and immediate guaranteed employment.

It is with great hope that you accept this letter of earnest support and factor it in your decision making process. Please know that a decision to grant Al release, returning him into society, into my home would be positively meaningful for us all in every possible way.

Please, if there is anything or other information that I could offer in this decision making process, do not hesitate to contact me. I hope I was able to convey how much it would mean to the myself and our family to have Al home with us.

Sincerely,

Janine Jackson-Davis
301-518-0380 (mobile)
301-519-7527 (home)
301-601-4350 (work)

*P.S. An attached duplicate of this letter is handwritten on subject note paper, paper that's easily accessible to educators. Really, who still writes on fancy stationery anyway?*

Page 1 of 3

18803 Impulse Lane
Gaithersburg, Md. 20879
March 3, 2019

Re: Albert Reed (90558-071)

To whom it may concern:

My name is Laurie Jackson, and I am Albert's older sister who affectionately calls him Al. I am 53 years old and our younger sister is 48 years old. Both of our Parents and Grandparents are deceased and its just us three for over 30 years.

I am writing to sincerely ask that you grant Al a sentence reduction to time served, inform you of who I am, and my commitment to provide the utmost support that will ensure Al a sound foundational re-entry and transition plan.

Here's what you should know about me, how I live my life, my accomplishments, and my regard for family. My family function by way of structure, rules, routines, high standards and expectations. We believe in hard work, service, and spending time together. I am married and have two teenagers. I embody "hope" in every aspect, personal and professional. I have a M.Ed.; I hold a

National Board Certification license (NBCC).
I am employed as a full-time Counselor with
Montgomery County Public Schools, Maryland.
In addition to my full-time employment, by
June of this year, I plan to work part time,
providing private therapy, specializing in assisting
children and adults heal from a traumatic
experience. It is my passion to support mental
well-being.

Please imagine how I, as well as my family
are elated over the prospect of having
Al come home. We held a family meeting
and discussed all that we would do to
welcome Al into our home. I love my brother!
Its important you know what Al's homecoming
means to me and my family. It means
more than words can express. It means
my kids being able to spend time with an
uncle they only heard of. My son Jared, a
high school senior, will attend college in the
fall and plans to become a screenwriter.
My daughter, Jurnee is a high school
sophomore, Girl Scout, avid Tennis and Softball
player. Both kiddos love their uncle Al and
are looking forward to him coming home to us.

My home is Al's home. I own a
single family house in a quaint neighborhood.
In my home, Al would occupy his own
bedroom, personal bathroom, and small
office space. As mentioned, I am married

Page 3 of 3

and my husband is employed with Montgomery County Government, Street Outreach. His responsibilities include working with youth in the county to prevent and reduce gang and other hostile behaviors among kids. Also, he is a Basketball Official for the County's Public and Private Schools. In addition to that, he owns and operates a cleaning business. The prospect of employment for Al is guaranteed by my husband. Please understand, we guarantee Al a safe and stable family that includes love, a home, emotional/social supports, and immediate employment.

It is with great hope that you accept this letter of earnest support and factor it in your decision making process. Please know that a decision to grant Al release returning him into society, into my home would be positively meaningful for us all in every possible way.

Please, if there is anything or other information that I could offer in in this decision making process, do not hesitate to contact me. I hope I was able to convey how much it would mean to myself and our family to have Al home with us.

Sincerely,
Denise Jackson-Davis

(Home) 301-517-7529  (mobile) 301-518-0380  (work) 301-601-4350

P.S. This letter is written on subject note paper, paper easily accessible to educators. Really, who still writes on fancy stationery anyway?

September 9, 2015

TO:        Mr. Renee Josey

FROM:      Donald Davis

SUBJECT: Albert Reed (4:94-00383)


Background: I am employed by the Montgomery County Government for the State of Maryland. I work with the Street Outreach Program. In this program I work with gangs and At-Risk Kids. I am also a community activist working with the Re-entry program.

I am writing this letter on behalf of Mr. Albert Reed who is serving a life sentence. Mr. Reed has been accepted into the Re-entry Program based in Montgomery County, Maryland. There are several components that Mr. Reed had to commit to before he was accepted. The components are as follows:

A. Narcotics Anonymous (NA) or Alcoholics Anonymous (AA) meeting. Mr. Reed must attend 90 meeting in 90 days upon his release. After the 90/90 is completed, Mr. Reed would need to attend at least three NA or AA meetings per week.
B. Drugs and alcohol test. Mr. Reed must submit to random urine test
C. Job training program
D. Aftercare Group (1 year program). Mr. Reed must attend one aftercare meeting per week.
E. Give Back Program (new program). Mr. Reed will be ask to go to schools and communities and speak with kids about the poor decisions that he made in life that placed him in prison with a life sentence. Mr. Albert Reed has committed to participate in the above program. If Mr. Reed does not complete all of the components of the program, he will be dismissed from the Re-entry Program.

If you have any questions, I can be reach at 240-447-7174 or by email at donald.davis@montgomerycounty.gov .


Donald Davis